SCHMITT, Respondent, vs. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

*January 12—February 2, 1904.*

*Railroads: Appeal and error: Verdict: New trial: Request for a special verdict: Estoppel: Practice: Newly discovered evidence: Conduct of trial: Argument: Discretion.*

1. Where it cannot be said that the evidence and all reasonable probabilities are against a verdict, the ruling of the trial court refusing to grant a new trial because the verdict is contrary to the evidence must be sustained.

2. Where counsel did not make it clear to the trial court, or opposing counsel, that a special verdict was requested, but put his request in such a way that it might easily be misunderstood, and did not correct the misunderstanding when it must have been apparent, he is estopped from claiming, on appeal, that his request was different from that which the trial court understood it to be.

3. All that is necessary to secure the right to the submission of a special verdict is to make oral request therefor at the close of the evidence.

4. A written request commencing, "Now comes the defendant in the above entitled action and moves and requests the court to submit to the jury herein for answer *and as a special verdict* the following questions," together with the facts in connec-

tion therewith, shown by the record, considered, and *held* to be simply a request to submit certain questions.

5. In such case, it is not error to submit a general verdict, and charge the jury generally as to the legal effect of its answers to special questions.

6. A motion for a new trial on the ground of newly discovered evidence is properly denied, where such evidence is in the possession of the party making the motion, and it was clearly his negligence that it was not present at the time of the trial.

7. Where a claim has been fully argued by plaintiff in his opening, the refusal of the trial court to permit defendant to discuss it after plaintiff's closing argument, it being asserted by defendant that plaintiff had therein taken a new position, sustained on appeal.

Appeal from a judgment of the superior court of Douglas county: Charles Smith, Judge. *Affirmed.*

This is an action to recover the value of certain household furniture and other property shipped by the plaintiff over the defendant's railroad from Spokane, Washington, and consigned to the plaintiff at West Superior, Wisconsin, October 18, 1901, and which was destroyed by fire by the burning of the defendant's warehouse at West Superior at 4:30 a. m., November 10, 1901. The defense was that the defendant was released from liability by the terms of the shipping contract. It appeared by the plaintiff's testimony that at the time of the shipment he received a shipping receipt or waybill for the goods, and that after the fire he delivered it to the defendant's agent at West Superior, with his claim. A paper was produced on the trial, which the defendant claims was the identical receipt or waybill in question. This paper was written in pencil on a printed form, described the goods, acknowledged the receipt of them for carriage and delivery at West Superior, and was properly stamped, but was without signature, save that at the bottom there was a printed signature, "Northern Pacific Railroad, by —— ——, Agent;" and upon the face there had been stamped and written the following words, "Prepaid, $106.80,

to apply H. M. Metzger, Agt." The following words were also written in pencil upon the face: "Released to val. $5.00 cwt." Upon the back of this paper there were printed a large number of conditions and rules, among which was the following:

"8. The corporation will only be liable as warehouseman after the property has been placed in their freight depot. But for loss or damage to property by fire, while in their freight depot or storehouse, the company will not be liable."

One Thunberg, receiving clerk for the defendant company at Spokane, identified this paper as the one which he gave to the plaintiff when the goods were shipped, and told him to take it to the freight office and pay freight thereon. The plaintiff, upon rebuttal, denied receiving any paper from Thunberg except a certificate of the weight of the goods, which he took to the cashier, and claimed that the cashier gave him a waybill or receipt, written entirely by himself. There was also other testimony given by the plaintiff's son, tending to show that the receipt produced in court was not the paper which the plaintiff had, and which he delivered to the defendant's agent. At the close of the evidence the defendant filed a written motion, which, after the title, reads as follows:

"Now comes the defendant in above action, and moves and requests the court to submit to the jury herein for answer and as a special verdict, the following questions, to wit: First. When were the household goods in question received and placed in the freight office of defendant at West Superior? Second. Did the plaintiff use reasonable diligence to remove the household goods from the freight depot after he knew they were there? Third. Were the words, 'Released to val. $5.00 cwt.,' in the bill of lading or receipt when the same was given to the plaintiff at Spokane? Fourth. Did the plaintiff know the words, 'Released to val. $5.00 cwt.,' were in the bill of lading or receipt at the time he received the same at Spokane? Fifth. What was the market value of the household goods at the time they were destroyed?"

The trial court instructed the jury to the effect that there were two pivotal questions in the case: First, whether the paper introduced in evidence was the bill of lading given to the plaintiff when he shipped the goods; and, second, if it was, did the plaintiff have a reasonable time, after he knew of the arrival of the goods at West Superior, to remove them, before the fire? The court further charged the jury that, if they found that the paper introduced in evidence was not the original bill of lading, they should return a verdict for the plaintiff, unless they further found that the plaintiff had a reasonable time to remove the goods after he knew of their arrival. On the other hand, if they found that the paper was the original bill of lading, or that the plaintiff, with reasonable or ordinary diligence, could have removed the goods before the fire, their verdict was to be for the defendant. The court further instructed the jury that, in addition to the general verdict, they were to answer certain questions, the first of which was the first question proposed by the defendant; and, there being no dispute upon that point, the court answered it for the jury. Second, was the second question proposed by the defendant. The third question proposed by the defendant had been stricken out by the defendant's attorney himself. The fourth question proposed by the defendant was stricken out by the court as immaterial. The fifth question proposed by the defendant was stricken out by the court after stating that that was covered by the general verdict, and another question No. 5 was added. The jury thereupon retired, and afterwards brought in a general verdict for the plaintiff, assessing his damages at $1,500, and made the following special answers:

"First. When were the household goods in question received and placed in the freight depot of defendant at West Superior? By the Court: In last days of October or first days of November. Second. Did plaintiff use reasonable diligence to remove the household goods from the freight depot

after he knew they were there? Yes. Third. Were the words, 'Released to val. $5.00 cwt.,' in the bill of lading or receipt when the same was given to plaintiff at Spokane? Stricken out by defendant's attorney. Fourth. Did the plaintiff know that the words, 'Released to val. $5.00 cwt.,' were in the bill of lading or receipt at the time he received the same at Spokane? Stricken out by court. Fifth. What was the market value of the household goods at the time they were destroyed? Stricken out by court. Fifth. Is the bill of lading introduced in evidence the one given to *Mr. Schmitt,* and by him delivered to Mr. W. H. Smith at West Superior? No."

A motion for a new trial was made both on the ground of errors upon the trial and upon the ground of newly discovered evidence, and was denied upon these grounds; but the court, being of opinion that the damages assessed were excessive, ordered a new trial, unless the plaintiff filed a consent to a reduction of the damages from $1,500 to $1,200, which being filed, judgment for $1,200 and costs was entered in favor of the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Louis Hanitch,* attorney, and *C. W. Bunn* and *L. T. Chamberlain,* of counsel, and oral argument by *Mr. Hanitch.*

For the respondent there was a brief by *W. D. Dwyer* and *Geo. C. Cooper,* and oral argument by *Mr. Dwyer.*

WINSLOW, J. The appellant's principal contention is that the finding of the jury to the effect that the bill of lading introduced in evidence was not the one delivered to the plaintiff when the goods were shipped is contrary to the evidence. With this contention we find it impossible to agree. It is true that there was much testimony tending to show that it was the identical bill delivered to the plaintiff, and by him turned over to the defendant's agent after the fire; and it is true also that the plaintiff admitted that upon its face it looked like the bill which he received; but he never admitted

26

that it was the same bill, and, on the contrary, he testified positively that the bill which he received was a different paper, not written by Thunberg (as was the bill in evidence), but written out in full and signed by the cashier. There was also evidence by the plaintiff's son, who saw and examined the original bill, that the words, "Released to val. $5.00 cwt.," were not upon the original bill. It is not a case where it can be said that the evidence and all the reasonable probabilities are against the verdict; therefore the ruling of the trial court refusing to grant a new trial on the ground that the verdict was contrary to the evidence must be sustained.

It is said that the trial court committed prejudicial error in charging the jury generally as to the legal effect of their answers to certain questions of the verdict. That the court did so charge is indisputable, and if in fact a special verdict was requested, then such general charge and the submission of a general verdict constituted manifest error under the rulings of this court. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 223, 78 N. W. 442. The question is whether a special verdict was requested by the appellant within the meaning of sec. 2858, Stats. 1898, or whether there was simply a request to submit certain issues of fact in addition to the general verdict. If the former, there was error; if the latter, there was no error. This question is not entirely free from difficulty. There was no oral request for a special verdict, but at the close of the testimony the appellant filed a paper entitled in the case and commencing as follows:

"Now comes the defendant in the above action, and moves and requests the court to submit to the jury herein for answer *and as a special verdict* the following questions, to wit."

Here follow five questions which will be found stated at length in the statement of facts. The court then proceeded to submit a general verdict to the jury, and to charge them generally upon the law, and at the close of this general

charge said to the jury that, in addition to the ordinary verdict, they should answer *these questions*. The court then read the first, second, and fourth questions, and, after reading the fourth, said to the defendant's attorney, "I might as well erase that, because they give that in the general verdict." to which counsel said, "Perhaps that is so." and the court thereupon withdrew it. The case then went to the jury without further remark, or any intimation anywhere that a special verdict had been demanded. Upon the hearing of a motion for a new trial the ground was taken that a special verdict had been requested, and that hence the general charge was erroneous; but the trial court, in its order overruling the motion, stated:

"The court holds that no request for special verdict was made; and neither was it treated as a request for a special verdict by the court or counsel at the time of the trial, but that it was rather in the nature of a request for the submission of specific questions to the jury, which questions were submitted to the jury with the exception of one as to the amount of damages, and that question was submitted in the general verdict."

This statement of the trial court as to the manner in which the written request was treated at the time of the trial certainly agrees very well with the facts shown by the record, and it must be accepted as conclusive. We have, then, the fact that neither court nor opposing counsel understood that there had been any request made for a special verdict, but simply a request made for the submission of certain questions; and not only this, but the court indicated this understanding very clearly to appellant's counsel when suggesting that the question as to the value might as well be erased because covered by the general verdict; and counsel assented to the suggestion, though he must have clearly seen that this could not rightly be done if the verdict were in fact a special verdict. What should be the rule when it appears that there has been misapprehension of this kind by court and counsel?

We can have no doubt that where the counsel did not make the nature of his request clear, but put it in such a way that it might easily be misunderstood, and did not correct the misunderstanding when it must have been apparent, he must be held to be estopped from now claiming that his request was different from that which the court understood it to be. It was very easy to request a special verdict in a way that could not be misunderstood. All that it was necessary to do was to rise at the close of the evidence, and say that the defendant requested a special verdict, and the right was secured. To pass to the court a paper containing a number of questions, with a written statement at the head to the effect that the defendant requests that the questions be submitted to the jury for answer and *as a special verdict,* would doubtless be sufficient if the court read the statement; but in the hurry of the trial it might easily be that the trial court and opposing counsel would entirely overlook the opening paragraph as simply a formal clause, and confine their attention to the questions themselves. When it is so easy to make the request in a way which cannot be misunderstood, what justification is there for making it in delphic language, or concealing it in unexpected places? We can see none, and we hold in the present case that the request must be treated as the trial court understood it—i. e., as simply a request to submit certain questions—and hence that the general charge and verdict was not error.

There are no other serious questions in the case. A motion for new trial on the ground of newly discovered evidence was made and overruled, and this ruling is claimed to be error, but it is plain that the ruling was correct. The supposed newly discovered evidence consisted of an alleged written release of the defendant from liability for destruction of the property by fire and other causes, given by plaintiff when he shipped the goods at Spokane. It is sufficient to say that this release was in possession of the defendant from

the time it was given, and it was clearly the defendant's own neglect not to have it present at the time of the trial.

At the end of the plaintiff's closing argument to the jury the defendant's attorney requested that he be allowed to argue the fifth special question to the jury, because he claimed that the position taken by plaintiff that the bill of lading in evidence was not the one received by him, but a substituted paper, was a new one, and had not been argued. The court, however, declined the request on the ground that the position had been fully argued by the plaintiff in his opening, and the ruling must be sustained. The conduct of the argument of a case is one peculiarly within the province of the trial judge to regulate, and the cases are rare where this court will interfere.

*By the Court.*—Judgment affirmed.